NOT FOR PUBLICATION (Document No. 46)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|   |   |
|---|---|
| JAMES O. RAINES, | : |
| Plaintiff, | : Civil No. 11-5681 (RBK/AMD) |
| v. | : **OPINION** |
| HAVELY G. LAPPIN, et al. | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This is a *Bivens* action brought by Plaintiff James O. Raines ("Plaintiff") against fifteen present and former employees of the Federal Bureau of Prisons (collectively, "Defendants") for injuries he allegedly suffered during his incarceration at three federal corrections facilities. The Court, in an opinion and order dated May 24, 2013, dismissed Plaintiff's claims against six of these Defendants for lack of personal jurisdiction (Doc. Nos. 55-56). Currently before the Court is a motion filed on behalf of the remaining nine Defendants—Jeffrey Eobstel, Bradley Jurgensen, Stephen Meyers, Ruben Miranda, Donald Terrell, John Chung, Tushal Patel, Chester McKinney, and Edgardo Magallon— to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted (Doc. No. 46). *See* Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, the Court will grant the motion.

1

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

In August 2001, Plaintiff was incarcerated at the Federal Corrections Institution at Fort Dix, New Jersey ("FCI Fort Dix").  He worked in the Federal Prison Industries ("FPI") – UNICOR Laser Cartridge Remanufacture facility at the prison, where his job was to refurbish printer toner cartridges.  Am. Compl. ¶ 6, pg. 1.  In September of that year, he started to encounter sinus problems.  *Id.* at 1-2.  Next, in mid-October, prison officials made the decision to take away the respirator mask that Plaintiff used while refurbishing the toner cartridges, although by the end of the month the masks had been returned.  *Id.* at 4-5.

In March 2002, Plaintiff was assigned to another FPI detail: the DXRC Computers Demanufacturing Factory.  *Id.* at 7.  This facility was cited by federal regulators for various health and safety violations, but the substance of those violations was not made clear to inmates like Plaintiff.  *Id.*  In 2005, his work station was moved to a different part of the facility where Plaintiff encountered dust and allegedly toxic particles.  *Id.* at 10-11.  Then, in May 2006, Plaintiff went to work at the "breakdown station," where his job was to physically break down with a hammer old discarded electronic equipment.  For this task he was given gloves and a mask.  In performing these duties, Plaintiff observed that when he hit the equipment with his hammer, dust would fly up in his face.  *Id.* at 11.  Again, Plaintiff was assured by prison officials that the substances he was encountering were not harmful to him.  *Id.* at 12.  He also found that machines around the facility in general were old and full of harmful substances.  *Id.* at 16.  He continued to inform his superiors of his concerns about the substances to which he believed he was being exposed.  *Id.* at 19-21.

---

[1] When considering the sufficiency of the factual allegations in a plaintiff's complaint, the Court, for purposes of deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), assumes such allegations to be true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

On one occasion, on November 20, 2006, Plaintiff was working at the facility when some of his co-workers tipped over a box filled with old computer monitors. When the monitors broke apart on the concrete floor, Plaintiff exited the area for fear of the chemicals that had been released. When his superiors discovered that he had left his workstation at an unauthorized time, they reprimanded him, notwithstanding his attempts to explain his reasons for having done so. *Id.* at 23.

In April 2007, while Plaintiff was working at the facility, he asked his supervisor if he could turn on the exhaust fan system in order to circulate the air. His supervisor refused to turn on the entire system, but he did activate a few wall-mounted fans. *Id.* at 26. Shortly thereafter, a factory worker swept dust off some overhead pipes, and the dust fell all over Plaintiff. Plaintiff immediately sought medical attention at the prison hospital. *Id.* He also started to present with red bumps on his skin, and severe internal pain. *Id.* at 27.

His symptoms worsened, and he again reported to the prison hospital. His doctors told him that his skin irritation was not serious. *Id.* at 29. They prescribed some topical cream for him, which was somewhat successful in clearing up the irritation, although Plaintiff found that he had red bumps on his chest that were not going away. *Id.* at 30. His doctors told him to continue the treatment and assured him that his condition was not serious. Plaintiff requested that the doctors perform blood work in order to better diagnose the cause of the bumps. *Id.* at 31. His doctors refused to do so.

Plaintiff's skin irritation continued, so again he sought medical treatment. *Id.* at 32. He was prescribed calamine lotion for his skin. *Id.* at 33  In June 2007, because of a concern at the prison about a chicken pox outbreak, Plaintiff did have blood testing done. The doctors tested his blood for viruses, but not for heavy metal exposure, as Plaintiff requested. While he was

awaiting the results of the blood test, he met with an orthopedic surgeon who performed surgery on his shoulder.  *Id.* at 34.  Finally, in October 2008, after Plaintiff had been transported to the Federal Correctional Institution at Rye Brook, New York, he suffered severe chest pains, and it was revealed that he had a collapsed lung requiring immediate emergency care.  *Id.* at 35-36.

Plaintiff filed suit in this Court on September 30, 2011 (Doc. No. 1).  Then, on November 7, 2012, Defendants filed the instant motion to dismiss Plaintiff's because it was barred by the statute of limitations (Doc. No. 46).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  Where, as here, a complaining party comes to this Court *pro se*, the Court must construe the complaint liberally in that plaintiff's favor.  *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992).  In such cases, the Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3d Cir.1997).  Seen in this light, a complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis.  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Second, the court should identify allegations that, "because they are no more than conclusions, are not

entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680).[2] Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### III. DISCUSSION & ANALYSIS

The primary thrust of Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted is that Plaintiff's *Bivens* cause of action is barred by the applicable statute of limitations. In response, Plaintiff offers numerous reasons why the Court should not dismiss his claim as time-barred. The Court will therefore first determine whether the statute of limitations has run on Plaintiff's claims against the moving Defendants. It will then consider each of Plaintiff's arguments in turn.

#### A. Statute of Limitations

*i. Has the statute of limitations period expired?*

The statute of limitations for a *Bivens* claim is determined by reference to the personal injury statute of the forum state. *Hughes v. Knieblher*, 341 Fed. App'x 749, 752 (3d Cir. 2009) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993)). In New Jersey, claimants have a two-year window in which to bring such claims. *See* N.J.S.A. §2A:14-2.

The two-year clock starts running at the point that the plaintiff has "a complete a present cause of action," meaning that he "can file suit and obtain relief." *Wallace v. Kato* 549 U.S. 384,

---

[2] Even under the liberal pleading standards afforded a *pro se* plaintiff, the Court need not credit such a party's "bald assertions" or "legal conclusions." *Haines,* 404 U.S. at 520-21; *Day,* 969 F.2d at 42.

388 (2007) (citing *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). Stated another way, a *Bivens* cause of action accrues when the plaintiff "knew or should have known of the injury upon which its action is based." *Brown v. Camden County Counsel*, No. 06-6095, 2009 WL 5174640 at *1 (D.N.J. Dec. 17, 2009) (citing *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)).

In this case, the essence of Plaintiff's claims is that Defendants failed to prevent his exposure to toxic chemicals at the UNICOR facility, and then failed to order appropriate medical testing in order to diagnose his condition, all of which led to his skin injuries, and finally his collapsed lung. Accordingly, giving Plaintiff the benefit of every doubt, the Court finds that his cause of action accrued at the point of his lung collapse on October 27, 2008. He filed his Complaint in this matter on September 30, 2011. Thus, he missed the two-year statute of limitations window by more than eleven months. As a result, Plaintiff's claims will be barred unless he can demonstrate that equitable principles of tolling or estoppel should apply based on the facts of his case.

      *ii.*     *Should the limitations period be tolled?*

A court's statute of limitations analysis on a *Bivens* claim must also incorporate relevant state tolling rules to the extent they are consistent with federal policies. *See Lake v. Arnold*, 232 F.3d 360, 368-70 (3d Cir. 2000). New Jersey law recognizes three principal tolling doctrines: the discovery rule, equitable estoppel, and equitable tolling.

      a.     The Discovery Rule

The discovery rule will delay the accrual of a cause of action "so long as a party reasonably is unaware either that he has been injured, or that the injury is due to the fault or neglect of an identifiable individual or entity." *Kendall v. Hoffman-La Roche, Inc.*, 36 A.3d 541,

551 (N.J. 2012) (citations omitted).  In this case, nothing in Plaintiff's Amended Complaint suggests that he was unaware of his injuries before October 27, 2008 (the day he suffered a collapsed lung).  On the contrary, his allegations make continuous reference to his skin irritation (which, along with the collapsed lung, comprise the basis of his alleged injury), as well as his belief that his medical condition was caused by his exposure to certain chemicals at the UNICOR facility.  Thus, the discovery rule cannot save Plaintiff's claims from the otherwise expired two year statute of limitations.

        b.      Equitable Estoppel

New Jersey courts have defined the doctrine of equitable estoppel as:

> [T]he effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse . . . .

*Trinity Church v. Lawson-Bell*, 925 A.2d 720, 727-28 (N.J. App. Div. 2007).  Accordingly, in the present context, a defendant may be estopped from asserting a statute of limitations defense if it engages in conduct that is "calculated to mislead the plaintiff into believing that it is unnecessary to seek civil redress."  *W.V. Pangborne & Co., Inc. v. N.J. Dept. of Transp.*, 562 A.2d 222, 227 (N.J. 1989).  At all times, the burden is on the plaintiff "to show that the defendant actively misled him, and that this deception *caused* the plaintiff's non-compliance with the limitations period."  *Scott v. IBM Corp.*, 196 F.R.D 233, 253 (D.N.J. 2000) (emphasis in original).  The plaintiff must also exercise due diligence to preserve his or her claim despite any misleading or otherwise injurious action taken by the defendant.  *Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997) (citing *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

In this case, although he doesn't specifically ask the court to estop Defendants from asserting a statute of limitations defense, Plaintiff claims that he waited to file his *Bivens* claim until after the statutory period had expired because "Bureau [of Prisons] staff" informed him that he had to exhaust his Federal Tort Claims Act ("FTCA") administrative remedies before filing any type of suit in federal court. Pl.'s Opp. Br. 3. The Court finds that this single statement, standing alone, does not amount to conduct which was "calculated to mislead" the Plaintiff into letting the statutory period to lapse. *See Pangborne*, 562 A.2d at 227. There is no indication of any intent by the Bureau of Prisons employee to lead Plaintiff astray. At best, the official may have been explaining (correctly) that in order to file an *FTCA* suit in federal court, it is necessary to exhaust the FTCA administrative process. *See* 28 U.S.C. § 2401(b). At worst, it may have been erroneous advice about a technical legal issue rendered by someone who may very well have had no legal training. In any case, this conduct, even if it were to be imputed to the moving Defendants in this action, does not warrant the exercise of equitable estoppel.

      c.      Equitable Tolling

Finally, New Jersey law recognizes the doctrine of equitable tolling, which in effect pauses the running of the statute of limitations.[3] That state's courts have found it to apply in three situations. First, tolling may be appropriate where a plaintiff has been "induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Villalobos v. Fava*, 775 A.2d 700, 707 (N.J. App. Div. 2001). Second, the doctrine may apply where a plaintiff has been prevented "in some extraordinary way" from asserting his rights, or, third, if the plaintiff has

---

[3] The difference between equitable tolling and equitable estoppel has been described in the following way: "unlike equitable tolling, equitable estoppel is not concerned with the running and suspension of the limitations period, but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. *Del Sontro v. Cendant Corp., Inc.*, 223 F. Supp. 2d 563, 571 (D.N.J. 2002) (quoting *Bomba v. W.L. Belvidere, Inc.,* 579 F.2d 1067, 1070 (7th Cir.1978)) (internal quotations omitted).

"timely asserted his rights mistakenly by either defective pleading or in the wrong forum." *Freeman v. State*, 788 A.2d 867, 880 (N.J. App. Div. 2002). The standards for equitable tolling as a matter of federal law in the Third Circuit are virtually identical. *See Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000) ("Equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum."). As with equitable estoppel, in order for a plaintiff to receive the benefit of equitable tolling, he must exercise diligence in pursuing and preserving his claims. *Wolf v. PRD Management, Inc.*, No. 11-2736, 2012 WL 1044504 at *3 (D.N.J. Mar. 27, 2012).

For the same reasons stated in the above subsection regarding equitable estoppel, the Court finds that the "advice" Plaintiff received from a Bureau of Prisons employee regarding the time to file his *Bivens* claims does not, as a matter of New Jersey law, constitute conduct which "actively misle[d]" Plaintiff into allowing his filing deadline to pass. *See Freeman*, 788 A.2d at 880. The Court further finds that this conduct does not amount to an "extraordinary circumstance" warranting equitable tolling, especially given the obligation of Plaintiff to exercise diligence in ensuring the preservation of his claim. *See Wolf*, 2012 WL 1044504.[4]

Similarly, the Court's research of applicable Third Circuit precedent leads it to conclude that the conduct in question does not satisfy federal equitable tolling standards either. *See, e.g.*, *Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997) (finding that plaintiff's phone conversation with a government official in which he was erroneously advised that it was unnecessary to file an administrative complaint and subsequently lost his claim did not

---

[4] The third equitable tolling principle concerning a plaintiff who files in the wrong forum is inapplicable in the instant case and will therefore receive no further attention here.

demonstrate either "inducement or trickery" by defendants into allowing a filing deadline to pass or "extraordinary" circumstances warranting equitable tolling, and observing "should a plaintiff in Robinson's position be able to circumvent exhaustion requirements by simply asserting s/he was given erroneous telephone advice from an agency employee, equitable tolling would be converted from a remedy available only sparingly and in extraordinary situations into one that can be readily invoked by those who have missed carefully drawn deadlines. We cannot extend the doctrine that far."); *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005)) (rejecting a pro se litigant's equitable tolling argument where litigant sought advice of government officials on how to pursue his claim and received incorrect information resulting in the lapse of the applicable statute of limitations and noting, among other things, that the government's advice was not "actively misleading"). For these reasons, the Court finds that Plaintiff's claim cannot be salvaged by the doctrine of equitable tolling.

      *iii.*     *Plaintiff's remaining arguments*

Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss his claims contains further explanations for his filing suit after the limitations period had expired. He explains that he was in the process of continuing to exhaust his administrative remedies for his FTCA claim during the relevant time period, and that such exhaustion efforts should act to toll the statute of limitations on his *Bivens* claim. It is true that because Plaintiff is incarcerated, he was required to exhaust his available administrative remedies before filing his *Bivens* claim in federal court. 42 U.S.C. § 1997e(a) (2006) (Prison Litigation Reform Act); *Nyhuis v. Reno*, 204 F.3d 65, 68 (3d Cir. 2000). Plaintiff is probably correct that the limitations period on a *Bivens* claim should be tolled while a prisoner engages in the administrative remedy process. *Shakuur v. Costello*, 230 Fed. App'x 199, 201 (3d Cir. 2007). However, the exhaustion requirements under the Prison

Litigation Reform Act are not interchangeable with those for the FTCA. *Fontana v. Lopez*, No. 11-2573, 2011 WL 2745809 at *7 n.8 (D.N.J. July 12, 2011) (citing *Robinson-Bey v. Feketee*, 219 Fed. App'x 738 (10th Cir. 2007)). Thus, the statute of limitations on Plaintiff's *Bivens* claim cannot be tolled by virtue of his attempts to exhaust administrative remedies on his FTCA claim; they are simply two different causes of action.[5] For this reason, Plaintiff's argument is unavailing.

**IV.     CONCLUSION**

For the reasons stated above, Plaintiff has failed to assert his *Bivens* claim against the moving Defendants within the applicable two year statute of limitations. Therefore, the Court must grant Defendants' motion to dismiss it. An appropriate order shall issue today.


Dated:   6/25/2013                                                                    /s/ Robert B. Kugler
                                                                              ROBERT B. KUGLER
                                                                              United States District Judge

---

[5] Finally, Plaintiff's argument that his case is "unique" provides the Court with no cognizable basis to excuse his failure to assert his claim within the applicable statute of limitations period.